1420694, United States of America v. Ronald Ray Norman. You may proceed. My name is Yolanda Norman, and I represent the Appellant Ronald Ray Norman in this case. May it please the Court? With the Court's permission, I would like to start with Issue 4, beginning at page 44 of the Appellant's opening brief. The question is whether a statement said by Mr. Ronald Ray Norman during a search should have been suppressed by the District Court. The term interrogation under Miranda refers not only to express questioning, but also to any words or actions on the part of the police, other than those normally made, attended to, arrested in custody, that the police should know are reasonably likely to elicit an incriminating response from the suspect. In this case, after a… But here we have two police officers talking to each other. If we rule your way, then how are the police ever going to be able to communicate with each other without worrying about running into the issue you raise? Well, without running into trouble, in this case, the officers could have given Mr. Norman his Miranda warnings. But they're trying to secure the prisoner who threw a gun, and they don't know what he's got on him. They don't want to take a whole lot of time with him. They want to secure him first, so they want to search him, secure him. We had another case where the police officer missed the gun and got shot and killed, and that was a capital case against the person who killed him. So police officers need to secure prisoners or arrestees, I should say. And so they're trying to do that, and as they're doing that, they need to talk to each other. Why would that evoke a response from the defendant when they're talking to each other? In the instant case, there was no need for discussion among the officers because they had already patted Mr. Norman down. They had him in custody, and so Officer Newman went into his pants pocket, and there was no reason for him to blurt out, make sure you search him good, look what I found. Because they had already given a preliminary pat to determine that there was no weapon on Mr. Norman. And allegedly, in this case, a weapon, according to the officers, had already been thrown away by Mr. Norman. So there was no reason under Miranda for the officer to say this, because there was no risk of harm due to five bullets without a weapon. But they didn't know that they hadn't missed something in the pat down, did they? According to Officer Perez, they had given a pat down. He'd given a pat down of the left pocket while Newman was giving a pat down of the right pocket. And after the pat down, that's when Officer Newman reached over and said to him, search him good, look what I found. Right, but he needs to further search beyond the pat down at that point. Well, according to the officers, this was supposed to be a quick pat down and that another search was to take place afterwards. So based upon the pat down that occurred, according to normal procedure, according to the court record, this was all that was necessary to secure Mr. Norman in custody. How is your client harmed by the statement when he has the bullets on him? Well, harmful error occurred in this case because it was actually Officer Newman who's alleged to have reached over with the five bullets in his hand. It's noteworthy that Officer Newman did not testify at trial. So it was only the remaining Officer Perez, whose testimony at trial was the substance on this issue as to the bullets. And without Officer Perez's testimony regarding the bullets in this case, it's our position that the evidence, the remaining evidence, would not prove the possession of the ammunition beyond- Okay, but if we go your way on the double jeopardy, does any of this matter? Well, it- Because the gun's enough to get, I mean, you have to send it back for resentencing, I understand, but the gun is enough to support the sentence he got on resentencing. The gun may be enough to support the sentencing. However, it matters under his constitutional rights as to whether or not this is actually a conviction or not, because there are two convictions, although it appears that there's one sentence under those convictions. And we believe that Mr. Norman has the constitutional right to have the charge remanded and the conviction acquittal. Did you argue for that in your brief, or did you only argue about the $100 special assessment? In my brief, we argued about the $100 special assessment. However, it was the government in this case that issued a Rule 28 J letter- About the Mesa case. Alerting the court to the Mesa case, in which we acknowledged the case and responded. Right, but how can you satisfy all four prongs of plain error, especially where you didn't brief it? Why haven't you forfeited that? Forfeit is different than the plain error. Even if Mesa establishes prongs one and two for you, and we can go through that also, but I'm asking you a separate question. Why isn't it forfeited? And the only relief we can give you is the $100 difference. In a case called Broussard decided in this court, the court stated that where it deems, especially in a criminal case, that a miscarriage of justice would occur, that it would, in fact, and could, in fact, to respond to, rule in favor of the defendant where the issue was not brought up at the trial court or in Appellant's opening brief. How is it a miscarriage of justice here? In Mesa, the sentences were consecutive, I believe, and this one, I mean, they were to follow one after the other. And this one, they're not. They're concurrent. So how is it, how can you establish prong three, and why is this a miscarriage of justice? It's a two-fold kind of question. Well, his substantial rights were affected because it is a conviction, and but for this- But he's not serving any more time than he would serve. Well, we don't know that he wouldn't if the case were remanded back to the district court for resentencing. So we say that, we can say that his substantial rights were affected because there was a conviction on two counts, not just one count. Am I correct that Mesa is distinguishable, though, on the fact that they were consecutive sentences rather than concurrent? Mesa may be distinguishable in the fact that they were consecutive sentences. However, our case is still applicable under Mesa because we can't get around the issue that there was a conviction in this case. And if the court is to remand the case, the government gets to choose which charge to bring forth, and there could be a resentencing. And we have no way of knowing how that would impact Mr. Norman's sentencing on a remand. But you get to do that if we find Mesa's applicable and if we find that you didn't forfeit this argument on appeal, correct? Correct. Next, we want to- Let me ask you this. If we overrule your point as to the blurting out of the Starbucks, so let's assume we agree that the court should have admitted that, and we therefore find that the conviction was, you know, validly based on that, does that affect this Mesa issue or not? Because it seems like he's saying he found the bullets at Starbucks, which suggests to me he possessed them at a different time than the gun, which would implicate whether this really is a double jeopardy question. Those facts were never brought out at trial. That's why we're asking this court to remand- Well, no. I found it in the Starbucks was brought out at trial. What I'm saying is does that support an inference? So he's got a gun. He goes to Starbucks and finds some bullets and puts them in his pocket. That's, to me, the import of the statement, I found them at Starbucks. So does that support an inference that the possessions were different, separate events, although culminating in a joint event there at the scene of this arrest? If that statement were true, the court is correct. It could support an inference. However, we don't know if that statement was true in terms of offered for the truth of the matter asserted or not. However, we do know that this statement was a huge part of the testimony in trial that led to Mr. Norman's conviction. So whether- What do you mean a huge part? Go ahead and finish your answer to Ms. Judge. Whether he found it at Starbucks or not would be an issue if the statement were being offered for the truth. Was there a limiting instruction on the statement? I mean, it's an admission against interest. If it's not a Miranda problem, if there's no problem with that, then his blurting that out is an admission against interest. There isn't any basis to limit it to something other than the truth of the matter. But what else would it be offered for, that he knows how to speak? I mean, obviously they're being offered for the fact that those are his bullets, that he found them at Starbucks and put them in his pocket. In this case, the testimony was offered to show that Mr. Norman, in fact, possessed the bullets. Not that nobody thought he found them at Starbucks, right? Nobody actually thought that this went to the truth, that he was found at Starbucks during the trial, right? Nobody did an investigation or sweep of the Starbucks and looked out to see if there was some weapons stashed there. That was just thought that he's a liar and he's making up something on the fly. No one investigated. Is that right? Is that what the context of that being offered was, that he's made up a ridiculous story at the scene? I believe in terms of the prosecution, that was the mindset. But why did you say it was so overwhelming and so important when you have the bullets and you have the officer testify that he had them on him? Because in this case, there's no fingerprints on the bullets. There's no other testimony regarding the bullets. Officer Newman, who was the only officer who was supposed to have seen the bullets, did not testify. And all we have left is the testimony of Officer Perez. Didn't you have called – I mean, not you because you weren't trial counsel. I don't believe – Mr. Kuniansky, I believe, wasn't it? Yes. But there's no reason y'all couldn't have called the other officer if you thought there was a conflict, as you seem to think there was a conflict in other parts of the sufficiency claim as well, right? The officer was not – he's available and all, right? Your Honor, as you indicated, I was not the trial lawyer in the case, and I don't have any background as to why Officer Newman was or wasn't called to testify in this case. Okay. For your arguments to work on sufficiency, we would have to hold that the testimony of the police officer was so incredible as to be fanciful and unbelievable that no reasonable jury could rely upon that. And that goes for your gun case and for your bullet case, doesn't it? No, I believe that you can – if this testimony or this statement had been suppressed, that the evidence against Mr. Norman would have been so scant that it requires a reversal. A testimony from an officer that he took this – that he and his partner took this from the person and that they saw that the gun was being thrown. You're saying that's scant, non-supportable evidence. It's direct testimony from the police officer at the scene. Well, in our brief, we also argue that the evidence is insufficient to support a finding that it was actually Mr. Norman who threw the gun to the ground. But the officer said he saw it happen. One officer said he saw it happen. One officer said it appeared to have happened. And their main argument against Mr. Norman is that there was no one else in the area. I live in Houston, and I can tell you that Interstate 45 is a very, very busy area. So whether someone was there that particular afternoon or not does not necessarily mean that someone else could not at some point in time drop that weapon. So you can get your guns on I-45 and your bullets at Starbucks in Houston? I don't know about bullets at Starbucks, but I know you could possibly get a gun on I-45 in Houston. Unfortunately, that's the day that we live in. But to bring it back to the point, the officer did say he saw him throw it. He said he saw it. And Officer Perez did testify that he saw Norman get the bullets from the pocket. He did not testify that he saw Norman get the bullets from the pocket. He testified that after Norman pulled the bullets from the pocket, he was on the left of Norman, Norman was on the right of Norman, and Norman reached around him in front of Norman to show him the bullets. I also wanted to add that when you mentioned the gun being found on the freeway, that also lends credence to the story that Norman may or may not have had the bullets, because why would a person have bullets and no weapon or running down the freeway throwing away a weapon and keep the bullets if they know? I'm sorry? These are all arguments for the jury, though. The jury heard all of these explanations that it didn't make sense and that the weapon shouldn't be shiny and they couldn't really have seen it and it was too long of a time period between when they retreated. The jury heard all of that and believed the officers. So I don't know of any—I don't see how you can prevail on that if there was evidence in the record from which the jury could believe and it's not out-of-space UFO fanciful. The essence of our argument is, notwithstanding the remaining evidence that the court has alluded to, but for this statement, the evidence against Mr. Norman would not have reached a threshold of beyond reasonable doubt because the remaining evidence, as we outlined in our brief against Mr. Norman, is scant. There were no bullets in the weapon, no fingerprints on the weapon and bullets, and it was only one officer, the one who didn't even check the pocket, who's testifying to the bullets. I see that my time has expired. Thank you. Thank you. May it please the Court, good morning. John Reed on behalf of the United States. Mr. Reed, does the government concede the conviction should be reversed? Would you sit back for re-sentencing and the government have to choose or not? Your Honor, you're in the best position to construe the meaning of the Mesa case. Mesa raised the issue sous-spante, and for that reason I did file a 28-J letter suggesting that the government's position would be remanded. And we appreciate your candor for the Court. Do you believe Mesa is distinguishable on these facts, or do you believe it's applicable? Well, it's certainly distinguishable in several respects. As Your Honor pointed out, the consecutive nature of the sentence was certainly very important to Judge Higginson when he wrote that opinion. On the other hand, the Court did raise the issue sous-spante, and the government in that case, and I will do so right now in all candor, acknowledged that this issue will come up in a 2255, I'm certain. And therefore, perhaps it should be addressed at this point. Counsel, I would just love to give you a hard time today. But I can't do it because that 12-J letter is so admirable, and it is such a landmark example of what prosecutors these days ought to do in the name of justice. So I thank you for that, and I salute you for it. I appreciate that, Your Honor, and I will just apologize to the Court for not raising it in my opening brief and waiting until the 28-J. Let me ask you this in respect of whether we should sous-spante, notice it, or plein air, or any of these other things that involve some element of discretion. I want to know the answer to the question, because whether they researched the Starbucks or not, I didn't see that they had a limited instruction on the I found it at Starbucks comment. And so if that's true, and he did find it at Starbucks, does that support the concept of two different times of possession, not just throwing it away and having the bullets for those few seconds? I understand that argument. But even assuming that doesn't support two convictions, what about the finding it at Starbucks? In all honesty, Your Honor, that's a point that I had not even considered. It would certainly suggest that he obtained them at a different time, and I think the Berry case says that if the evidence shows that it's not stored or obtained separately, you can charge, try, convict, and sentence for multiple counts. Given that people hadn't thought of that, and what if we were to find that it was the same time period as everybody's been arguing throughout the case, are our options to send it back to let the government elect a conviction and then the court re-sentence on that, or if we find that we could just change the 200 to 100 if we find that it's factually distinguishable or forfeited? Those are our options, basically. I believe so, Your Honor, and based on Mesa and Berry. But my question's a little different, which is not whether anybody's argued this before, but whether that should impact the question of our – we don't have to do that. We also don't have to, under the fourth prong of plain error, recognize an error. We have to look at the other factors and so on, even if you assume prong three, which I'm not assuming. And I'm asking, so then when we talk about, and Judge Rievely very eloquently spoke about the issue of justice, if we're talking about justice, and this guy really did possess it at two separate times, then justice is exactly what he got. So then that's my question. Should we use that mindset in looking at the question of – that wouldn't affect the $100 because that's preserved, I think, but it would affect the rest of it as far as what is our view of the justice of what happened here. That's my question. I certainly agree with you, Your Honor. I'm just not certain that the cases support – if I'm understanding Your Honor correctly, separating the $100 from the conviction, I do think they go together and they either all rise or all fall. No, because we're – I'm sorry. We're having to recognize a forfeited error on the rest of it. True. So it is different. She just asked – the only relief she asked for is the $100. That's true. And to give her more relief, or him, her client, more relief, we do have to go into a different – so I don't think that the cases aren't dealing with a standard review situation like that. So we are – to give more relief than the $100, we are having to use a standard review that's not de novo and therefore involves some measure of discretion. And so that's what I'm asking about. If I'm wrong on that, I mean, tell me. Because it's preserved on the $100, it's preserved on everything. I mean, fine. Tell me that. I'm just telling you, Your Honors, that that's the way I read the cases. If Your Honors disagree, it's your prerogative to say I'm wrong in the way I interpreted Mesa. Right. If you're not entitled to the $100, if the reason you're not entitled to the other is because it could be two separate instances. Correct. If the two separate instances rises or falls on the whole thing, doesn't it, Mr. Reed? Right. I believe that's correct, Your Honor. He either possessed them at separate times or he didn't. And the cases are clear. If it's simultaneous, once the jury convicts on multiple counts, the government has to elect on which one to proceed at sentencing. And I apologize, Judge Haynes, if I'm not trying to avoid your question. I understand your struggle, but I respectfully disagree that it all rises and falls on one thing because I do think we have different standards of review here for the $100 versus everything else. And I personally think standards of review matter and can result in a different outcome, which is why we have different standards of review. That's absolutely true. I do not disagree with anything Your Honor has said. That doesn't mean this case will come out differently because of all those thoughts. I'm just throwing that out there because this is my chance to ask you about it. I understand. Now, do you want to address the issue of the blurting? If we were to vacate the conviction or say that one of them is to be vacated, then does the blurting of the Starbucks matter? Because you just vacate the bullets anyway, and then it doesn't matter. As a practical matter, probably not. But, of course, in the usual course of things, you handle things like suppression first and then sufficiency second and then sentencing issues last. So just as a practical matter, I agree with you, Your Honor. It would not matter. As far as the suppression issue goes, I do not think this defendant was subject at all to interrogation. As Your Honor pointed out, these were two officers engaged in an active search of this individual, communicating with one another that, hey, there's a potential threat here. Look what I found. I found bullets in this pocket. You better be careful as you are searching his left side. This court in Bennett said it's imperative for one officer to warn another of any potential dangers or threats. This is the kind of statement that is normally attendant to an arrest and, in this case, a search. It is not an interrogation. That's in this case, other than words or conduct normally attendant to an arrest. That's the first prong of the test. So there was no interrogatory here. There was nothing directed at Mr. Norman. No interrogation. That's my view. As far as the sufficiency arguments go, Mr. Norman essentially is asking this court to substitute its views for those of the jury. But if we take out that statement, I mean, and I need to go back and look at the record again. I thought that Norman, I'm sorry, I thought that Perez said that he saw Newman take the bullets out and then he was the defendant, questions whether he could have seen that. But that's a little different from whether he says he saw it. That's true, Your Honor. It's record page 558. Officer Perez says, I seen him, meaning Officer Norman, pull out the actual bullets. That's at page 24 of my brief. So there is that actual evidence of he visually, not just waiting for the guy to blurt anything out, but he visually saw it. And then that would be enough to support a conviction by itself without the blurting. Absolutely. Because as Judge Elrod pointed out, arguably the found at Starbucks was viewed as a lie, I guess, as a way to exculpate himself from the bullets, rather than an actual admission that, oh, yes, I went to Starbucks and found these bullets. Absolutely, Your Honor. So its probative value maybe is kind of, I don't know, a little bit, other than my argument on sentencing or my question on sentencing, which seems a little, I don't know, potentially flaky in terms of the probative value of that statement to the conviction. I think that's true. And these are all issues that the jury was able to resolve. Yeah, but they heard the statement. So the question is if we find that the statement shouldn't have been admitted, then the question is the harmfulness of the error. Yes. And so that's what I'm trying to get at is what does this statement really do for us? I guess the only thing it negates is the idea that seemed to be sort of suggested that Newman planted the bullets. It negates that because it seems like he's owning up to having the bullets, but it doesn't otherwise add much. That's true, Your Honor. And beyond that, you've got a direct eyewitness testifying, I saw him retrieve the bullets from his pocket. In addition to that, if you want further corroboration, you have the fact that two additional officers said they saw him throw down a .38 special revolver. And guess what? Those bullets were .38 caliber. So the gun and the bullets sort of go together. I think that's additional corroboration. And the jury was able to weigh the evidence, the competing testimony of Mr. Norman's wife who said my husband did not have bullets and Officer Perez who says I saw the bullets. That's a classic jury question. All of the arguments that Mr. Norman raised really are jury questions. The fact of the gun being dirty or clean, the fact of who testified that they found the gun, which by the way, as I point out in my brief, there were no inconsistencies here. Mr. Norman points to one particular page in his reply brief of the record where he says Officer Hubenak claimed to find the gun and Officer Pardo claimed to find the gun. That's not true. The page that is cited was to the suppression hearing. The jury was not present for that, number one. And number two, the prosecutor asked Officer Hubenak, you participated in the arrest? Yes. You chased Mr. Norman?  You saw him throw a gun? Yes. You found the gun? Yes. That's the collective you, meaning the police. During the trial with the jury present, Officer Hubenak testified we found the gun. Officer Pardo testified that he and Officer Hubenak drove to the scene and I picked it up. What about this argument that there's a lot of guns lying around on the freeway in Houston? That may or may not be true, Your Honor. There's nothing in the record that supports that. And it's pure speculation on his part to suggest that the jury should have found him innocent because theoretically someone else might have left the gun there when you have direct testimony from two officers saying we saw him throw the gun. The jury could have disbelieved the officers, but they did not. That's the bottom line there, Your Honors. Do you have anything else, Mr. Reardon? I do not, Your Honors. Unless you have any specific questions, I will submit on my brief and ask that you affirm your convictions. Thank you. Thank you. Ms. Jones? I wanted to answer a question about how the issue of double jeopardy affects our case. Under Broussard, that was decided a couple of months prior to Mason. The court said that if the property at issue, the weapon or the ammunition, were found in a single search, the case and the opinion did not hinge on when the property was obtained, but when it was found. If it was found in a single search, then double jeopardy applies. In this case, there was one single search. When you review the indictment, both charges arise because of the search that occurred on October 12th. So this is a single search, not two separate searches that would cause two convictions on remand. Also, I want to address that although there are and were questions for the jury to decide in this case, there was one question that the jury did not decide. And that was whether to admit the statement or the alleged statement of Mr. Norman that I found the bullets at Starbucks. And it's our position that that statement itself heavily weighed in the jury's mind when deliberating in this case. Thank you. Thank you very much. We have your argument and we appreciate your service to the court as your court appointed.